UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                Case No. 1:19-cr-25
                                            JUDGE DOUGLAS R. COLE

    v.

LELON CAMPBELL,

              Defendant.

## OPINION AND ORDER

This cause comes before the Court on Defendant Lelon Campbell's Motion to Dismiss Indictment for Violating his Sixth Amendment Right to a Speedy Trial (the "Motion") (Doc. 42). In the Motion, Campbell argues that the government violated his constitutional and statutory speedy trial rights. For the reasons more fully discussed below, the Court **DENIES** the Motion.

## FACTUAL BACKGROUND

Because the Motion raises speedy trial issues, it is the facts regarding the case's procedural history, rather than those relating to the charged crime, that drive the analysis. Accordingly, the Court focuses this background section largely on the former, rather than the latter.

This case began on February 25, 2019, when the government filed a criminal complaint against Campbell. The Complaint alleged that Campbell sold acetyl fentanyl, fentanyl and cocaine in violation of 21 U.S.C. § 841(a)(1), which prohibits the distribution of controlled substances. (Doc. 1). Campbell was arrested the next

day, on February 26, 2019. (Doc. 14). Shortly thereafter, on March 1, 2019, the Court held a detention hearing. At that hearing, Magistrate Judge Bowman held that pre-trial detention was appropriate pursuant to the presumption of detention in 18 U.S.C. § 3142(e)(3). (Doc. 12, #17).

On March 6, 2019, the Grand Jury returned a five-count indictment charging Campbell with distributing fentanyl (Count I); possession with intent to distribute (Count II, fentanyl and Count III, cocaine); felon in possession of a firearm (Count IV); and possession of a firearm in furtherance of an offense (Count V). (Doc. 17). Campbell appeared for his arraignment before Magistrate Judge Bowman five days later, on March 11, 2019. At that hearing, Campbell entered a plea of not guilty.

Eleven days after that, on March 22, 2019, Campbell filed the first motion in this case, a contested protective order, which the Court granted on June 14, 2019. As the case progressed, Campbell periodically requested, and the Court entered, six ends of justice orders ("EOJs") that tolled the time continuously from June 14, 2019, through March 5, 2020.[1] In the middle of that string of orders, on September 9, 2019,

---

[1]  The first EOJ tolled the time from June 14, 2019, through June 21, 2019, to give "the defense … adequate time to receive and review discovery…and defense counsel … adequate time to confer with her client." (Notation Order, June 17, 2019). The second EOJ tolled the time from June 21, 2019, through August 9, 2019, to allow "counsel adequate time to prepare and file pretrial motions." (Notation Order, June 21, 2019). The third EOJ tolled the time from August 9, 2019, through September 6, 2019, on the grounds that "failure to grant such a continuance would deprive Defendant of adequate time to receive and review supplemental discovery, [and] to conduct further investigation." (Notation Order, Aug. 6, 2019).

The Fourth EOJ tolled the time from September 6, 2019, through November 22, 2019, to permit "Defendant … adequate time to receive and review the Court's decision on his first pretrial motion and to consider the filing of additional motions." (Notation Order, Sept. 9, 2019). The Fifth EOJ tolled the time from November 22, 2019, through January 15, 2020, to allow "defense counsel … adequate time to receive and review discovery and to confer with his client." (Notation Order, Nov. 22, 2019). The Sixth EOJ tolled the time elapsing from

2

Campbell filed a motion for discovery. Early the next year, while time was still tolled under the string of EOJs, Campbell also filed two more motions: a motion to suppress on February 15, 2020, and a motion for a *Franks* hearing on February 17, 2020.[2]

On March 9, 2020, four days after the last ends of justice order expired, the Court entered an Order in the case instructing that "[t]ime is TOLLED through disposition of Defendant's pretrial motions." (Notation Order, Mar. 9, 2020). Exactly a month later, on April 9, 2020, Campbell filed a motion for bond. (Doc. 37). Very little docket activity occurred in the case for the next few months.

On November 23, 2020, the case was transferred to the undersigned Judge. (Doc. 39). Shortly thereafter, on December 10, 2020, Campbell filed a new motion for bond to attend his grandfather's funeral, which the Court denied the next day. Campbell's motion for discovery, motion to suppress, and motion for bond are still pending before this Court.

After December 2020, the docket again fell silent, until, on February 28, 2021, Campbell filed the instant motion to dismiss the Indictment on constitutional and statutory speedy trial rights grounds. That motion is now fully briefed and ripe for review.

## LAW AND ANALYSIS

The right to a speedy trial is a bedrock right that "has its roots at the very foundation of the [American Legal System's] English law heritage." *Klopfer v. North*

---

January 15, 2020, until March 5, 2020, to allow defense counsel "to consider motion practice and to confer further with his client." (Notation Order, Jan. 15, 2020).
[2] The Court granted the Motion for the *Franks* Hearing on April 19, 2021.

*Carolina*, 386 U.S. 213, 223 (1967). This right is "an important safeguard," designed, in part, to preserve a defendant's liberty and to "prevent undue and oppressive incarceration prior to trial." *United States v. Marion*, 404 U.S. 307, 320 (1971) (quoting *United States v. Ewell*, 383 U.S. 116, 120 (1966)); *see also United States v. Loud Hawk*, 474 U.S. 302, 312 (1986) ("[T]he Speedy Trial Clause's core concern is impairment of liberty.").

As to federal criminal defendants, a right to speedy trial right arises from two sources—one constitutional, and the other statutory. First, the Sixth Amendment instructs that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. Then, in 1974, Congress passed the Speedy Trial Act, 18 U.S.C. § 3161, which gave statutory "effect to the [S]ixth [A]mendment right." *Betterman v. Montana*, 136 S. Ct. 1609, 1616 (2016) (quoting *United States v. MacDonald,* 456 U.S. 1, 7, n.7 (1982)). While both provisions address the same underlying issue, there are important differences between the two. The Sixth Amendment speedy trial right, for example, does not limit the government to a definite and specific time period. *See Barker v. Wingo*, 407 U.S. 514, 522 (1972). The Speedy Trial Act, by contrast, does. The Act provides that a trial shall "commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).

Here, Campbell argues that the government violated both his constitutional and statutory rights to a speedy trial. (Mot. at #184–86). The Court addresses each claim separately below, concluding he is wrong as to both.

## A. The Government Did Not Violate Campbell's Sixth Amendment Speedy Trial Rights.

Although the constitutional speedy trial right holds a prominent place in the American legal tradition, how it applies in a particular case is not always cut and dried. Indeed, the Supreme Court refers to the constitutional speedy trial right as "'amorphous,' 'slippery,'" and necessarily dependent on the circumstances of each case. *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (quoting *Barker*, 407 U.S. at 522). Reflecting the difficulty in distilling clear-cut rules governing this important right, the Supreme Court has instead adopted a four-factor test to organize and balance the facts that inform the Sixth Amendment speedy trial analysis. Specifically, courts are to consider: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant resulting from the delay. *Barker*, 407 U.S. at 530. Apart from the first factor, which, as described below, acts as a sort of trigger for consideration of the remaining three, none of the *Barker* factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533. Rather, courts must consider each factor as part of a "difficult and sensitive balancing process." *Id.*

Of course, as the analysis turns on the existence of "delay," the first question is when the Sixth Amendment speedy trial clock starts. Thankfully, that question at least has a clear answer. The Supreme Court has explained that the Sixth

5

Amendment's speedy trial right attaches once the defendant is formally "accused." *Marion*, 404 U.S. at 313. That is because the government's accusation is what gives rise to the concerns the speedy trial right is designed to address. Namely, an accusation tends to "seriously interfere with the defendant's liberty," "subject him to public obloquy, and create anxiety in him." *Id.* at 320. "As a general proposition," such accusations arise by arrest or through indictment, and either will trigger the Sixth Amendment speedy trial right. *Brown v. Romanowski*, 845 F.3d 703, 712–13 (6th Cir. 2017). Moreover, as either can trigger the clock, the one that occurs earlier is the event that matters. *Id.* (explaining that the constitutional speedy trial "right usually attaches when the defendant is arrested or indicted, whichever is earlier") (citations omitted). Here, Campbell was arrested on February 26, 2019, eight days before the Grand Jury issued the March 6, 2019, Indictment. Campbell's Sixth Amendment speedy trial rights thus attached at the time of his arrest. Accordingly, the Court applies *Barker*'s four-factor inquiry based on that date.

### 1. *The Length Of Delay Is Long Enough To Trigger A Speedy Trial Clause Analysis.*

If "taken literally," the Speedy Trial Clause "would forbid the government to delay the trial of an 'accused' for any reason at all." *Doggett v. United States*, 505 U.S. 647, 651 (1992). But that clearly cannot be the case. Delay is inherent in the judicial process, and *some* delay, for example, to allow for plea negotiations, to give parties time to review discovery, or to permit the defense to contemplate and prepare pre-trial motions, is beneficial for the defendant and for the operation of the justice system generally. *Barker*, 407 U.S. at 534 (recognizing that "some delay would have

been permissible under ordinary circumstances"). After all, the government typically has the opportunity to build its case *before* arrest. So criminal defendants would be ill-served by a regime that forced them to proceed to trial immediately after their arrest. In other words, the typical temporal ebb and flow of criminal proceedings is normal, even helpful, so long as the case is prosecuted with "customary promptness." *Doggett*, 505 U.S. at 652. That said, delay can nonetheless pose a threat to a defendant's speedy trial rights when the "interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Id.* at 651–52 (quoting *Barker*, 407 U.S. at 530–31).

The first *Barker* factor asks the Court to assess whether the delay in a particular case has crossed this "threshold" into the land of the "presumptively prejudicial." *Barker*, 407 U.S. at 530. Absent that, the Court need not even consider the remaining three factors. *Doggett*, 505 U.S. at 652 (holding that defendant must identify delay that "stretches beyond the bare minimum needed to trigger judicial examination of the claim") (citing *Barker*, 407 U.S. at 533–34); *see also Barker*, 407 U.S. at 530 ("The length of the delay is to some extent a triggering mechanism.").

Unfortunately, like many other aspects of the analysis, there is little by way of bright-line rules for determining when this threshold is met. Rather, it is a flexible inquiry that is "necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530–31. For example, both the parties and the court understandably may require a longer time to move to trial in a case involving a complex conspiracy charge than in one involving "ordinary street crime." *Id.* at 531.

Although the exact threshold for what constitutes prejudicial delay is far from clear, not surprisingly "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U.S. at 652. And when the "delay approach[es] one year," that is typically considered so "uncommonly long" as to be "presumptively prejudicial" for purposes of the first *Barker* factor. *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005) (citing *Doggett,* 505 U.S. at 652 n.1). Here, almost exactly two years elapsed between Campbell's arrest, on February 26, 2019, and the date he filed his Motion to Dismiss, on February 28, 2021. Especially given "the uncomplicated nature of the narcotics charge," this period is sufficiently long so as to raise at least the threshold possibility that the government violated Campbell's speedy trial rights. *Id.* (holding that, in a drug trafficking case, a 25-month delay between arrest and trial was "uncommonly long," and thus satisfied the first *Barker* factor).

And Campbell's successful showing on the first *Barker* factor in turn triggers the Court's consideration of the three remaining *Barker* factors: the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant.

### 2. *Most Of The Delay Is Attributable To Campbell.*

The second *Barker* factor, the reason for the delay, addresses "whether the government or the criminal defendant is more to blame for the delay." *United States v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003) (quoting *Doggett,* 505 U.S. at 651) (brackets omitted). On one end of the spectrum are instances where the government has created the delay "to gain some tactical advantage over [defendants] or to harass

them." *Barker*, 407 U.S. at 531 n.32 (quoting *Marion*, 404 U.S. at 325) . Engaging in this type of bad faith conduct "weigh[s] heavily against the government" in a speedy trial analysis. *Schraene*, 331 F.3d at 553. Conversely, though, "delay caused by the defense weighs against the defendant." *Brillon*, 556 U.S. at 90. Such delay counsels against a finding that the government violated the defendant's constitutional speedy trial right.

Between these two poles lie instances where the delay is not clearly attributable to the deliberate conduct of either party. But even then, the delay may arise from one party's negligence. And in such cases, that delay will still weigh against the party at fault, albeit less heavily than deliberate delay would have. *Id.* ("More neutral reasons such as negligence or overcrowded courts weigh less heavily but nevertheless should be considered to weigh against the government." (brackets omitted) (quoting *Barker*, 407 U.S. at 531)).

In analyzing the reason-for-delay factor here, the roughly twenty-four-months of delay falls into two differing time periods. The first is the approximately twelve months between Campbell's arrest, on February 26, 2019, and the expiration of the Court's sixth ends of justice order on March 5, 2020. The delay during this period largely, if not exclusively, arose from Campbell requesting, and the Court granting, *six* continuances. These continuances all served Campbell's interests. For example, Campbell moved for the June 17, 2019, continuance and the August 6, 2019, continuance to permit him to receive and review discovery. Later, Campbell switched counsel and sought additional time for that new counsel to familiarize himself with

9

the case. (Notation Order, Nov. 22, 2019). In other words, Campbell *specifically asked* the Court, on multiple occasions, to *delay* resolution of his case for a period amounting to over a year. The responsibility for the delay during this period, then, falls squarely on Campbell. *See e.g.*, *United States v. Young*, 657 F.3d 408, 415 (6th Cir. 2011) (holding that the defendant caused the delay because he "twice requested a continuance, acquiesced to the continuances sought by other parties, and when the government made its only request for a continuance, agreed with that continuance *and* asked for additional time").

As for the time period after March 2020, though, the story is a little different. To be sure, Campbell bears at least some responsibility for the remaining delay. For example, in February 2020, Campbell filed two motions: a motion to suppress evidence on February 15, 2020, and a motion for a *Franks* hearing on February 17, 2020, both of which sought hearings. (Docs. 32 & 33). The government requested an extension of time to respond, which Campbell did not oppose. (*See* Notation Order, Mar. 9, 2020). Thus, the government did not respond until March 20, 2020, at which time the Court still needed to schedule any required hearings.

But the scheduling of those hearings presented a separate issue. In mid-March 2020, the COVID-19 pandemic started impacting court operations in the Southern District of Ohio. The Court entered its first General Order directed at the pandemic on March 12, 2020, about a week before the government filed the responsive motions noted above. (*See* S.D. Ohio General Order 20-02). On March 20, 2020, the Court entered General Order 20-05. That Order closed the courthouses in each of the three

seats of court in the Southern District, subject to very limited exceptions, for fourteen days. Thus, the Court could not set any hearings during that time. Then, on April 3, 2020, the Court entered General Order 20-08, continuing all in-person hearings, including on criminal motions, through at least June 1, 2020. On May 29, 2020, the Southern District adopted a Reconstitution Plan to allow for some court operations, but that called upon judicial officers to "make efforts to minimize the number of on-site court proceedings to protect the health and safety of staff and visitors." (S.D. Ohio Gen. Order 20-17 (describing Reconstitution Plan)).

Since that time, and continuing until very recently, subsequent General Orders have continued to strongly advise against in-person hearings. (*See, e.g.*, S.D. Ohio Gen. Order 20-23 "in-court proceedings scheduled between the date of this General Order and August 31, 2020, shall occur in person only upon a determination by the assigned judge that the interests of justice require the proceedings be conducted in that manner"); 20-25 (extending same language through September 30, 2020)). To be sure, there was a brief window last October where the Court could begin to schedule in-person evidentiary hearings (*see* S.D. Ohio Gen. Ord. 20-27), but even that came to a stop when the Court again closed the Potter Stewart Courthouse for part of November due to COVID-19 concerns. And even upon reopening, the discouragement for in-person proceedings remained in place. (*See, e.g.*, General Order 20-36 ("in-court proceedings scheduled between the date of this General Order and December 31, 2020, shall occur in person only upon a determination by the assigned

judge that the interests of justice require that the proceedings be conducted in that manner").

To the extent that the COVID-19 pandemic, and the court system's efforts to minimize the public health impacts of that pandemic, is to blame for the delay, that undercuts Campbell's speedy trial argument. The speedy trial right is principally designed to prevent *the government* from unduly hampering a defendant's liberty. But, when delay arises for some "valid" reason outside of the government's control, that necessarily means that it was *not* the government which denied the defendant a right to speedy trial. *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006) ("[V]alid reasons for a delay weigh in favor of the government.") (citing *Barker*, 407 U.S. at 531). Here, the government was not stalling, nor was the Court simply ignoring the case. Rather, the Southern District of Ohio took the steps outlined above based on guidance received from public health authorities regarding how best to mitigate risks to public and employee health, while also trying to meet the needs of the judicial system. That strikes this Court as a "valid reason[] for a delay."

Although Campbell acknowledges the impact of COVID-19, he nonetheless seeks to attribute the resulting delay to the government. Specifically, Campbell suggests that the delay is attributable to the government's failure to prioritize his case during the pandemic. Campbell says that the Court "did continue to operate, albeit on a restricted basis," and he claims that "despite safety protocols" "Campbell's case received no attention." (Mot. at #185). What Campbell's argument fails to acknowledge is that Court's limited operations made it nearly impossible to schedule

an in-person evidentiary hearing on his motions, let alone to schedule the jury trial that ultimately would have been necessary to satisfy his right to a trial. In fact, only recently has the Southern District determined that jury trials can go forward. (Even now, they can go forward only as to cases involving detained criminal defendants.) And beyond that, in terms of his claim that his case should have been prioritized, as further explained below, Campbell never contacted the Court requesting an exception to the generalized prohibition on in-person proceedings, nor claiming any special prejudice from failure to move forward in his case. To the extent that he had such concerns, he should have raised them through an appropriate filing.

In sum, the entire first year of the delay in this case is attributable to Campbell. And the remaining delay is largely attributable to the combination of Campbell's own conduct (filing motions that required evidentiary hearings) coupled with the impacts on court operations caused by COVID-19. Those are valid reasons for delay, which do not suggest a speedy trial violation. Thus, this factor counts against his claim.

### 3.  *Campbell Did Not Vigorously Assert His Right To A Speedy Trial.*

The third *Barker* factor is "[w]hether and how a defendant asserts his right" to a speedy trial. *Barker*, 407 U.S. at 531. Here, Campbell asserted his right to a speedy trial when he filed the instant Motion in February of this year. But that is not the end of the inquiry. This prong doesn't simply ask whether the defendant *ever* pressed a speedy trial right; it requires the Court to probe "the degree to which the defendant has asserted the right" to a speedy trial. *United States v. Brown*, 169 F.3d 344, 350

(6th Cir. 1999). The logic is "[t]he more serious the deprivation, the more likely a defendant is to complain." *Barker*, 407 U.S. at 531. To properly make this assessment, the Court must look to "whether [Campbell's] surrounding conduct" demonstrates that he actually wanted to have a speedy trial. *Young*, 657 F.3d at 417.

Take, for example, *Barker*, the seminal case that created this constitutional test. There, the defendant moved to dismiss the indictment on speedy trial grounds, but only after he consented to several continuances that caused most of the delay in his case. *Barker*, 407 U.S. 534–35. The defendant consented to these continuances, the court reasoned, because he wanted to wait and see if a jury would acquit his co-conspirator. *Id.* at 536. This purposeful delay in asserting the speedy trial right, the court held, "strongly indicates… that the defendant did not want a speedy trial." *Id.*

The Sixth Circuit came to a similar conclusion in a case where the defendant "repeatedly asked for and joined continuances … [and] never filed a motion for an immediate trial." *Young*, 657 F.3d at 417. Of particular importance was the fact that the defendant "never opposed a requested continuance from any party, including the Government or any co-defendant." *Id.* at 412.

Here, too, Campbell repeatedly requested continuances so that he could (1) get new defense counsel up to speed; (2) receive and review discovery; and (3) consider whether to file additional pretrial motions. In moving to continue the case, Campbell demonstrated that (at least during the 1-year-plus period in which he sought such continuances) he did not actually want a speedy trial. Rather, he chose to delay the

14

case for strategic reasons. Even after Campbell finished requesting continuances, he filed several pretrial motions that, again, showed he was not ready to proceed to trial.

That said, the Court is mindful of *Barker*'s caution that there may be reasons why a "defendant has failed to object to continuances," that do not have any bearing on his speedy trial claim. *Id.* at 536. For example, the *Barker* Court posited that "[t]here may be a situation in which the defendant was represented by incompetent counsel, was severely prejudiced, or even cases in which the continuances were granted ex parte." *Id.* None of these circumstances are at play here, however.

And, as for the period of time beginning last March, when the Southern District of Ohio began severely limiting in-person hearings, Campbell again failed to raise his speedy trial concerns. As noted above, despite now claiming that his case should have been prioritized during that time, he never filed anything with the Court suggesting that was the case, or describing why that prioritization was warranted given the general status of court operations.

In sum, the Court finds that Campbell's speedy trial claim is at least somewhat "reminiscent of Penelope's tapestry."[3] *Loud Hawk*, 474 U.S. at 314. Specifically, while Campbell now asks for a speedy trial, he consumed a full year seeking continuances, substituting counsel, and filing motions that required a hearing. *Id.* at 315. And when holding such a hearing became largely impossible, Campbell raised not a peep. So

---

[3] To avoid choosing a suitor while her husband was away at war, Penelope, Odysseus's wife in Homer's Odyssey, continually weaved a tapestry and told her suitors that she would marry one of them only when she was finished with the project. Homer, The Odyssey, Book II, lines 91–105 (R. Lattimore trans. 1965).

15

"while [Campbell] may have asserted his right, he never did so in a manner that firmly demanded he be tried." *Young*, 657 F.3d at 417.

### 4. *Campbell Failed To Identify Any Specific Prejudice.*

The final *Barker* factor requires Campbell to "show that 'substantial prejudice' has resulted from the delay." *United States v. Ferreira*, 665 F.3d 701, 706 (6th Cir. 2011) (quoting *Schreane*, 331 F.3d at 557). Prejudice is assessed in light of "the interests which the right to speedy trial is designed to preserve." *United States v. Graham*, 128 F.3d 372, 375 (6th Cir. 1997). These interests include "(i) prevent[ing] oppressive pretrial incarceration; (ii) … minimiz[ing] anxiety and concern of the accused; and (iii) … limit[ing] the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. The last concern is "the most serious," "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *United States v. Brown*, 498 F.3d 523, 532 (6th Cir. 2007) (quoting *Barker*, 407 U.S. at 532).

This prong often presents a challenge for defendants because "time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Doggett*, 505 U.S. at 655 (quoting *Barker*, 407 U.S. at 532). In some cases, however, the government's conduct is so egregious that a defendant need not show "affirmative proof of particularized prejudice." *Id.* at 655 (citations omitted). One such instance is where the government delays the defendant's trial in "bad faith." *Wilson v. Mitchell*, 250 F.3d 388, 396 (6th Cir. 2001).

16

Courts can likewise presume prejudice under *Barker*'s fourth factor when the length of the delay is "excessive." *Romanowski*, 845 F.3d at 717. *See also Doggett*, 505 U.S. at 655 ("excessive delay presumptively compromises the reliability of a trial"). Of course, "excessive" for these purposes is necessarily different from—and longer than—the threshold delay needed to trigger analysis under *Barker*'s first factor. The basic idea, though, is that the prejudice associated with delay "intensifies over time," and, at some point, does not merely trigger analysis, but actually suggests a violation in its own right. *Doggett*, 505 U.S. at 655.

Neither of those situations apply here. As "the delay is overwhelmingly due to [Campbell's] own evasion, he is not entitled to a presumption of prejudice" based on bad-faith conduct. *Wilson*, 250 F.3d at 396. And, the delay in this case is just over two years, which, while enough to meet the threshold under *Barker*'s first factor, is not "excessive" for purposes of the fourth factor under Sixth Circuit standards. *See Romanowski*, 845 F.3d at 717 (finding that a twenty-five-month delay did "not entitle[] [the defendant] to a presumption of prejudice under the fourth factor"); *see also United States v. Jackson*, 473 F.3d 660, 667 (6th Cir. 2007) (holding that a twenty-month delay "was not so long as to justify an inference of prejudice at the fourth step of the *Barker* inquiry").

The Sixth Circuit thus requires Campbell to identify "specific" and "substantial" prejudice. *Young*, 657 F.3d at 418. He presses two arguments in that regard. First, Campbell says that one of his "key witnesses, Mr. Willie Knight" died in December 2020. (Mot. at #187). Mr. Knight, Campbell claims, provided an affidavit

claiming that he, not Campbell, "was the owner of the contraband used to indict … Campbell." (*Id.*). Mr. Knight's inability to testify to that fact, Campbell argues, is prejudicial. Secondly, Campbell claims generally that "[o]ther witnesses are now no longer able to be contacted because they have since moved and changed both address and phone numbers." (*Id.*). Relatedly, Campbell suggests that, as a result of this ongoing erosion of exculpatory evidence, his "mental and physical health have and continue to deteriorate during his prolonged detention" and he is worried that "he can no longer receive a fair trial." (*Id.*).

"It goes almost without saying that the death or unavailability of a witness … prejudices the defense." *Graham*, 128 F.3d at 375 (citing *Barker*, 407 U.S. at 532). But that principle rests on two assumptions. First, that the deceased witness would have offered the alleged testimony, and second, that the testimony would alter the outcome of the case. *See Wilson*, 250 F.3d at 396 (holding that no prejudice existed because "[n]othing about this allegedly unavailable testimony … suggests that if it had been presented to the jury, the outcome of the trial would have been any different"); *see also United States v. Brown*, 808 F. App'x 348, 350 (6th Cir. 2020) (explaining that prejudice exists only when "the delay … make[s] a conviction … more likely.").

The Court is at a significant disadvantage in assessing what the impact of Knight's testimony may have been, as Campbell declined to provide the Court the affidavit that Knight allegedly gave him. But even based on Campbell's description, it is not altogether clear that Knight would have "exonerated" Campbell as he claims.

18

(Mot. at #187). According to Campbell, Knight would have testified that "[Knight] was the owner of the contraband used to indict Mr. Campbell." (*Id.*). But, as the government points out, that evidence would be irrelevant to the two firearms charges in the indictment. And the rest of the charges facing Campbell involve distribution and possession, not "ownership" of controlled substances. Accordingly, Knight's testimony that he "owned" the contraband, if that is what he would have said, might not do much to undermine the government's case.

That said, it is possible that Knight's potential testimony would have added some other value to Campbell's defense. But if that is the case, Campbell is required to identify what that may have been. Beyond the brief description of the unsupplied affidavit noted above, Campbell's motion states only that "Mr. Knight was willing to testify on Mr. Campbell's behalf and his testimony would have helped exonerate him." (Mot. at #187). This vague statement fails to identify the "specific" and "substantial" prejudice that supposedly resulted from Mr. Knight's death. *See, e.g.*, *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (holding that a defendant's blanket claim that his deceased mother "could have supported defense assertions of innocence at trial" was not sufficient to establish prejudice); *see also Young*, 657 F.3d at 420 (finding no specific prejudice when "it is hard to evaluate any significance [the absent witness's] testimony might have had").

The same vagueness problems likewise plague Campbell's general assertion that some witnesses might be hard to track down two years after his arrest. The Court simply cannot find specific and substantial prejudice when Campbell "does not specify

what the testimony of any of the [unnamed and] unavailable witnesses might have been, even in a general way." *Id.*

In sum, all four *Barker* factors point to the conclusion that the government did not violate Campbell's Sixth Amendment right to a speedy trial. *See United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000) ("When the government prosecutes a case with reasonable diligence, a defendant who cannot demonstrate how his defense was prejudice *with specificity* will not make out a speedy trial claim no matter how great the ensuing delay.") (emphasis added). This is one of those cases where, as the Supreme Court remarked in *Doggett*, the "pretrial delay [was] … both inevitable and wholly justifiable." 505 U.S. at 656.

## B.   The Government Did Not Violate Campbell's Statutory Speedy Trial Rights.

Separately, Campbell argues that the delay in this matter violated his statutory speedy trial rights under 18 U.S.C. § 3161. The statutory speedy trial right, unlike its wilier, constitutional cousin, boils the speedy trial right down to a fairly precise calculation. Specifically, the statute requires that "[i]n any case in which a plea of not guilty is entered, the trial of a defendant … shall commence within seventy days." 18 U.S.C. § 3161(c)(1). The clock starts ticking on either "the date the defendant has appeared before a judicial officer of the court" or "the filing date (and making public) of the information or indictment," "whichever date last occurs." *Id.* Here, Campbell appeared for his arraignment before Magistrate Judge Litkovitz on February 26, 2019, about a week before the Grand Jury issued the indictment, on

20

March 6, 2019. Accordingly, Campbell's statutory speedy trial clock started running on that latter of those two dates, or on March 6, 2019.[4]

But the speedy trial clock does not always expire a strict seventy days from the date it starts. This is because the Speedy Trial Act excludes certain time periods from the calculation. 18 U.S.C. § 3161(h). Fifteen days passed before the first excludable act in this case occurred on March 22, 2019, when Campbell filed a contested motion for a protective order. The parties finished briefing that motion on April 26, 2019. Accordingly, the period of time "while the district court [was] waiting for additional submissions from the parties, is automatically excluded." *United States v. Mentz*, 840 F.2d 315, 327 (6th Cir. 1988) (citations omitted); 18 U.S.C. § 3161(h)(1)(D). As the motion did not require a hearing, 18 U.S.C. § 3161(h)(1)(D) required "prompt disposition" of the motion after the parties finished their briefing. The Act defines prompt disposition in the form of thirty excludable days once the motion is "actually under advisement." 18 U.S.C. § 3161(h)(1)(H). The Court granted the protective order forty-eight days later, on June 14, 2019. Accordingly, eighteen days over the Act's thirty-day limit elapsed on the speedy trial clock. That makes a total of thirty-three days, when combined with the fifteen days that elapsed before Campbell filed the protective order.

The same day the Court granted the protective order, Campbell requested, and the Court granted, the first of what would become six consecutive ends of justice orders. These ends of justice orders collectively tolled the speedy trial clock

---

[4] The date of the indictment does not count for purposes of the speedy trial act calculation. *United States v. Mentz*, 840 F.2d 315, 326 (6th Cir. 1988) (citations omitted).

continuously from June 14, 2019, until March 5, 2020. The Court supported each of these continuances with the statutorily-required finding "that the ends of justice [are] served by taking such action [and] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). At the end of that period, then, no additional time elapsed on the clock beyond thirty-three days that had already elapsed before the first EOJ.

And, immediately before the last of those Orders expired, another tolling event occurred. In particular, on February 15, 2020, Campbell filed a motion to suppress, and two days later, he filed a motion for a *Franks* hearing. (Docs. 32, 33). Both motions requested an evidentiary hearing. And the Court is scheduled to conduct that combined hearing on April 27, 2021.

That creates a problem for Campbell's speedy trial argument, as the Speedy Trial Act excludes any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on … such motion." 18 U.S.C. § 3161(h)(1)(D). Campbell observes that over a year has elapsed between the date that he filed that motion and the date of the scheduled hearing. But, the Supreme Court has confirmed that, "for pretrial motions that require a hearing," any delay between the filing of the motion and the date of the hearing is excludable time under the Act, even if the court did not address the motion "prompt[ly]" or in a "reasonably necessary" timeframe. *Henderson v. United States*, 476 U.S. 321, 329–30 (1986). Thus, when Campbell filed the first of his two motions on February 15, 2020—his

motion to suppress requesting an evidentiary hearing—his statutory speedy trial clock stopped, and it will not resume at least until the hearing occurs.

In short, Campbell's statutory speedy trial clock was frozen from June 14, 2019, until March 5, 2020, on account of the various continuances he filed. And it was again (and somewhat concurrently) frozen from February 15, 2020, through the present on account of Campbell's pretrial motion to suppress.

In sum, a total of thirty-three days have elapsed out of the seventy on the statutory speedy trial clock. The Court therefore finds that there was no violation of Campbell's statutory speedy trial rights.

## CONCLUSION

For the reasons above, the Court **DENIES** Campbell's motion to dismiss. (Doc. 42).

**SO ORDERED.**

April 20, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**