**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

                              **Case No. 1:19-cr-25**
      **v.**                         **JUDGE DOUGLAS R. COLE**

**LELON CAMPBELL,**

      **Defendant.**

## OPINION AND ORDER

This cause comes before the Court on the government's unopposed Motion to Seal Exhibit A to the government's opposition to Campbell's Motion to Suppress. (Doc. 47). For the reasons more fully discussed below, the Court **DENIES** the Motion, but does so **WITHOUT PREJUDICE**. The Court further **GRANTS** a temporary seal to allow the parties fourteen days in which to file a new motion providing the information described below that is necessary to justify a permanent seal.

## LAW AND ANALYSIS

"It would be easy—in the interest of judicial economy, one might say—to grant a sealing motion when no party objects." *Lewis v. Smith*, No. 2:20-cv-3461, 2020 WL 6044082, at *3 (S.D. Ohio Oct. 13, 2020). But a court should not, indeed cannot, grant a motion to seal simply because it is easy and convenient to do so. Rather, courts must evaluate a motion to seal in light of the weighty public interests in judicial transparency and open access to court records. *Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). Accordingly, as the Sixth Circuit

recently explained, "a court's obligation to explain the basis for sealing court records is independent of whether anyone objects to it." *Id.* at 306.

The public right of access to judicial information is secured both in the First Amendment and the common law. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) (conducting analysis of both the common-law right of access and the First Amendment right of access). "Although the scope of the First Amendment and common law rights differ somewhat, when a right of access arises under either, the burden falls on the party opposing disclosure to show compelling reasons that justify confidentiality." *In re Morning Song Bird Food Litig.*, 831 F.3d 765, 773 (6th Cir. 2016) (citations omitted).

Whether a right of access exists under either body of law will depend on the nature of the document or proceeding at issue. The document at issue here is a search warrant affidavit that is the subject of Campbell's motion to suppress. The affidavit is attached as the first exhibit to both Campbell's motion and the government's response. The Court also admitted the affidavit into evidence at the motion to suppress hearing. The question here is whether the common law right of access, or the First Amendment right of access, preclude the parties' efforts to seal the affidavit in this case.

Start with the constitutional right of access. The First Amendment right of access exists in a particular proceeding in a criminal case if "(1) that proceeding has 'historically been open to the press and the general public' and (2) 'public access plays a significant positive role in the functioning of the particular process in question.'" *In*

*re Search of Fair Finance*, 692 F.3d 424, 429 (6th Cir. 2012) (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986)). This test is commonly referred to as the "experience and logic" test. *Id.*

The Sixth Circuit's decision in *Fair Finance* made quite clear that there is no First Amendment right of access to a search warrant affidavit under this test. *Id.* at 433. The *Fair Finance* court reasoned that, under the "experience" portion of the test, "[i]t is indisputable that proceedings for the issuance of search warrants are not, and have not been, public." *Id.* at 430. Rather, the *Fair Finance* Court explained, courts usually conduct proceedings for the issuance of search warrants ex parte. *Id.* The court held that the "logic" piece of the test pointed in the same direction, as "public access to search warrant documents prior to the execution of a search would harm criminal investigations by enabling criminal suspects to learn of impending searches and by potentially leading them to remove or destroy evidence." *Id.* at 432.

As this overview of the court's analysis reveals, *Fair Finance*'s holding was necessarily responsive to the nature and purpose of the affidavit at issue in that case. Specifically, the *Fair Finance* court examined the public right of access as it applied to an affidavit attached to an application for a warrant that served only to establish probable cause for the requested warrant. The search warrant affidavit at issue here at one point fulfilled that traditional role, but now takes on a second life both as the key exhibit to a motion to suppress and as a piece of admitted evidence central to a hearing on that motion. (Tr. of Hr'g on Mot. to Suppress, Doc. 50, #335).

The fact that the affidavit at issue here plays such a central role in a motion to suppress is significant for the Court's constitutional analysis. Unlike the "proceedings for the issuance of search warrants" at issue in *Fair Finance*, hearings on motions to suppress, like certain other pre-trial criminal proceedings, historically have been, and logically should be, open to the public. *United States v. McVeigh*, 119 F.3d 806, 812 (10th Cir. 1997). This historical right of access means that the "experience" prong of the "experience and logic test" cuts in favor of a First Amendment right of access. The same is true of the "logic" piece of the test. A suppression hearing is one of the most "critical pre-trial proceeding[s]," and can be "as important as the trial itself." *Id.* (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984)). As suppression hearings evaluate the "conduct of law enforcement officers[,] … the public interest in access to a suppression hearing is particularly high." *Id.* (citing *Waller*, 467 U.S. at 46); *see also Matter of N.Y. Times Co.*, 828 F.2d 110, 113–14 (2d Cir. 1987). Given the public interest in such proceedings, the First Amendment right of access fairly extends to the exhibits used at such a hearing. *See Matter of N.Y. Times Co.*, 828 F.2d at 114 ("[T]he First Amendment right of access applicable to a suppression hearing extends to the exhibits at the hearing.") (citing *In re Herald Co.*, 734 F.2d 93, 101 (2d Cir. 1984)). That includes the affidavit here.

Given the First Amendment interests involved in exhibits used at suppression hearings, a seal is appropriate only if it is "essential to preserve higher values" and is "narrowly tailored" to those interests. *In re Search of Fair Finance*, 692 F.3d at 429 (quoting *Press-Enterprise*, 478 U.S. at 9). The parties' motion identifies an interest

that could check the first box, namely, the parties suggest that a seal would serve the "higher value" of ensuring the "safety of the witness referenced in the warrant affidavit." (Mot. to Seal, Doc. 47, #47). The Court agrees that witness safety is of crucial interest, both to the criminal justice system, and to the public at large.

But, while the motion identified a "higher value," the motion to seal falls short on the narrow tailoring front. The affidavit at issue is eight pages long. It includes a variety of information, some of which admittedly concerns a government witness, but much of which appears completely unrelated to the witness, at least at first blush. The parties' attempt to seal this information wholesale fails to satisfy the First Amendment's narrow tailoring requirement. At most, the First Amendment would support redacting the allegedly sensitive information.

While the analysis under the common law right of access is slightly different, *see, e.g.*, *In re Morning Song Bird Food Litig.*, 831 F.3d at 772–73, it leads to the same result here. Unlike the First Amendment right of access, which attaches based on the "experience and logic test," the common law right of access is "left to the sound discretion of the trial court." *Nixon*, 435 U.S. at 599. The Sixth Circuit's recent decision in *Shane Group* provides a framework for the exercise of this discretion.

In *Shane Group*, the Sixth Circuit distinguished between documents in the "discovery stage" and the "adjudication stage" of litigation. *Id.* at 305. The first of these stages is largely a private matter between the parties, which involves collection and exploration of documents that "might or might not be relevant to their case." *Id.* Accordingly, "[s]ecrecy is fine at the discovery stage, before the material enters the

judicial record." *Id.* (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)).

"At the adjudication stage, however, very different considerations apply." *Id.* (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). The adjudication stage begins when "the parties place material in the court record." *Id.* At that point, the documents in the record begin to directly inform the court's ultimate disposition of the case. These documents, then, can provide the public notice of "whether a right does or does not exist" and of "the [type of] conduct [that can give] rise to [such a] case." *Id.* Perhaps even more importantly, transparency at the adjudication stage prevents the courts from "masking impropriety, obscuring incompetence, and concealing corruption." *Id.* (quoting *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*,, 710 F.2d 1165, 1179 (6th Cir. 1983)).

Although *Shane Group* was a civil case, its reasoning applies in the criminal context. *See, e.g.*, *United States v. Sittenfeld*, No. 1:20-cr-142, 2021 WL 1438300, at *6 (S.D. Ohio Apr. 15, 2021) (noting that *Shane Group* applies to criminal matters); *Lewis*, 2020 WL 6044082, at *1 (applying *Shane Group* to a motion to seal a presentence investigation report and a competency evaluation report in a criminal matter); *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (recognizing, in a post-*Shane Group* decision, that there is a "strong presumption in favor of openness regarding court records… [i]n civil cases, as much as in criminal matters" (citation and internal quotations omitted)).

For example, one of *Shane Group*'s articulated goals is to provide the public notice of the type of conduct that could give rise to civil liability. *Shane Group*, 825 F.3d at 305 ("the public's interest is focused not only on the result, but also on the conduct giving rise to the case"). The public has a similar, and possibly even weightier, interest in having notice of the type of conduct that could lead to criminal liability. Similarly, although the presumption of openness serves to control for corruption and incompetence in the civil system, it is arguably even more important to control for such improprieties in the criminal system, where such misconduct could have severe consequences.

At the adjudication stage in both criminal and civil matters, then, *Shane Group* requires the party seeking a seal to advance a "compelling reason why certain documents or portions thereof should be sealed." *Shane Group*, 825 F.3d at 305 (citing *Press–Enter. Co. v. Superior Court of Cal.*, 464 U.S. 501, 509–11 (1984)). And, even if the movant can demonstrate a compelling reason, the proposed "seal itself must be narrowly tailored to serve that reason." *Id.* As part of the narrow tailoring requirement, it falls to the "proponent of sealing" to "analyze in detail, document by document, the propriety of secrecy, [and to] provid[e] reasons and legal citations." *Id.* at 305–06 (quoting *Baxter*, 297 F.3d at 548).

The government's unopposed motion to seal here falls short of these standards. To start, there is little doubt that an exhibit to a motion to suppress, like the one at issue here, falls on the "adjudicative" side of the *Shane Group* divide. As mentioned above, the *Shane Group* Court held that "[t]he line between these two stages,

discovery and adjudicative, is crossed when the parties place material in the court record." *Id.* at 305. The affidavit at issue here is not only an exhibit to a motion to suppress, but the Court also admitted it into evidence during a hearing on that motion. (Tr. of Hr'g on Mot. to Suppress, Doc. 50, #335). Therefore, the affidavit is a document that is "in the court record" for purposes of *Shane Group*.

Not only does the express language of *Shane Group* support this finding, but it also is consistent with the policy underlying that decision. On a deeper level, the presumption behind the right of public access in *Shane Group* "traces its roots to the Roman and English traditions of *trials* being open to the public." *Sittenfeld*, 2021 WL 1438300, at *7 (citing cases). A motion to suppress (and any responsive briefing and attached exhibits) is intimately connected to the concept of a trial. Motions to suppress, like their civil-law cousin motions in limine, are motions which serve the core function of limiting the evidence that the court can consider *at trial*. It is well-established that motions in limine are "adjudicative" motions that can trigger *Shane Group*'s strict scrutiny test. *See, e.g., Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, No. 2:07-cv-116, 2016 WL 9403903, at *1 (S.D. Ohio Aug. 3, 2016) (applying *Shane Group* to an exhibit to a motion in limine); *Babcock & Wilcox Co. v. Cormetech, Inc.*, No. 5:14CV514, 2017 WL 4286776, at *3 (N.D. Ohio Sept. 27, 2017). In fact, one of the documents at issue in *Shane Group* was a motion to strike the report and testimony of the plaintiffs' expert witness, and the Court held that the heightened sealing burden applied to that motion. *Shane Group*, 825 F.3d at 306.

Briefing and exhibits concerning motions to suppress, then, are also subject to *Shane Group*'s requirements.

In its unopposed motion to seal, the government identifies a potentially compelling interest. Namely, the government asserts that a seal is necessary to protect the "safety of the witnesses referenced" in the exhibit. (Doc. 47, # 241). Even so, the government once again runs into a problem on the narrowly-tailored front. Specifically, the government seeks to seal the exhibit in its entirety, without offering any explanation as to why redaction of key information, rather than sealing in the entirety, would not serve the same identified compelling interest of witness safety. Accordingly, the Court **DENIES** the government's unopposed request for a permanent seal, but without prejudice to its ability to further either (1) explain why redaction, rather than sealing, will not adequately protect the identified interest, or (2) if redaction will work, to identify the portions that should be redacted, with explanations as to why such redactions are necessary and appropriate.

## CONCLUSION

For the reasons above, the Court **DENIES** the government's motion for a permanent seal (Doc. 47). The Court, however, **GRANTS** a temporary seal to permit the parties an opportunity to re-file a motion to seal within fourteen (14) days that comports with *Shane Group*'s requirements.

**SO ORDERED.**

May 18, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**