**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    v.

**LELON CAMPBELL,**

    **Defendant.**

**Case No. 1:19-cr-25**

**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

A jury found Lelon Campbell guilty on drug distribution charges. The Court sentenced him, and the Sixth Circuit affirmed. Now, proceeding pro se, he moves for a new trial under Federal Rule of Criminal Procedure 33. (Doc. 145). For the reasons discussed below, the Court **DENIES** Campbell's motion.

## BACKGROUND

On December 3, 2021, a jury found Campbell guilty of Distribution and Attempt to Distribute a Controlled Substance under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 (Count 1); Possession with Intent to Distribute Fentanyl under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count 2); and Possession with Intent to Distribute Cocaine under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 3). (Superseding Indictment, Doc. 71, #490–91; Jury Verdict Form, Doc. 87, #597–600). Specific to Count 2, the jury found that Campbell possessed at least 40, but less than 400, grams of fentanyl. (Doc. 87 at #599). Based on those convictions, the Court sentenced

Campbell to 204 months of imprisonment followed by ten years of supervised release. (J., Doc. 118, #1110–11).

After trial, Campbell made various attempts to undo the jury's verdict. First, he moved for acquittal under Federal Rule of Criminal Procedure 29. (Doc. 88). The Court denied that motion. (Doc. 91). Then, Campbell moved for a new trial under Federal Rule of Criminal Procedure 33. (Doc. 100). But before the Court could rule on the motion, Campbell withdrew it. (Doc. 111; 4/14/23 Not. Order).

At that point, Campbell appealed his jury conviction and below-guidelines sentence. (Doc. 120). The Sixth Circuit affirmed both. *United States v. Campbell*, No. 23-3736, 2024 WL 4635426 (6th Cir. Oct. 31, 2024).

Separately, while Campbell's appeal was still pending, he filed a pro se "Motion to Contact Freedom of Information Act People or Hamilton County Records in regards of the call records," (Doc. 141), which the Court construed as a motion for a new trial under Rule 33, (Doc. 143, #2263–64). But because Rule 33(b)(1) precludes courts from granting a motion for a new trial while an appeal is pending, the Court denied Campbell's motion. (*Id.* at #2264).

Now that Campbell's appeal is over, he moves, once again, for a new trial. (Doc. 145). While his motion is not the model of clarity, he seems to base his request for a new trial on five pieces of evidence. As to the first four, Campbell argues that the government committed a *Brady* violation. And as to all five, he seems to argue that they comprise newly discovered evidence warranting a new trial. To expand on all that a bit, Campbell first argues that the government failed to disclose the initial

2

investigation report that stated the drug quantities investigating officers retrieved from one of the locations searched in connection with Campbell's drug trafficking activities. (*Id.* at #2289–90). According to Campbell, that report states drug quantities lower than those stated in the drug lab reports admitted at trial. (*Id.*). Second, Campbell complains that the government failed to disclose the financial contract it made with the confidential informant who testified against him. (*Id.* at #2291). Third, Campbell claims that the government withheld a DNA lab report that he says excluded him as the DNA donor on certain physical evidence introduced at trial. (*Id.* at #2292). Fourth, Campbell argues that the government failed to disclose "pre-recorded buy money" from a controlled drug buy, as well as the correct date and time of a video depicting that buy. (*Id.*). Fifth, and finally, Campbell claims that Hamilton County does not have a call record of the anonymous criminal complaint that the two investigating officers (Officers Nicholas Casch and Brian Follrod) testified at trial provided a basis for their search warrant. (*Id.* at #2291). And relying on that missing call record, he argues that the officers "lied on the stand" about how they obtained the search warrant. (*Id.*).

The government disagrees on all fronts. (Resp., Doc. 146). It maintains that it disclosed all the evidence Campbell claims it did not—i.e., the initial investigation report, the financial contract, the DNA lab report, and the correct date and time of the controlled-buy video—so none of it is "newly discovered." (*Id.* at #2304–07). As for the record of the anonymous call, the government says several practical reasons could

3

explain its absence, and in any event, Campbell knew about the anonymous drug complaint well before trial and could have investigated it then. (*Id.* at #2305–06).

Campbell did not reply by the deadline the local rules impose. S.D. Ohio Civ. R. 7.2(a)(2). So the motion is now ripe.

## LAW AND ANALYSIS

Federal Rule of Criminal Procedure 33 permits the Court to vacate a judgment and order a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A new trial is "an extraordinary remedy for 'extraordinary circumstances.'" *United States v. VanDemark*, 39 F.4th 318, 322 (6th Cir. 2022) (quoting *United States v. Burks*, 974 F.3d 622, 625 (6th Cir. 2020)). Here, Campbell seeks to make that showing on five claimed shortcomings. As noted, the first four appear to involve alleged *Brady* violations. So the Court begins by considering whether Campbell has demonstrated that any such violations occurred. Concluding that he has not, the Court then considers whether any of the five pieces of evidence (the four he claims present *Brady* issues plus the missing call record) amount to "newly discovered" evidence that would warrant a new trial. Ultimately, though, the Court concludes that none of the evidence to which he points is in fact newly discovered.

### A. Campbell Does Not Establish Any *Brady* Violations.

To establish a *Brady* violation, the defendant must show that: (1) "the government suppressed evidence, either willfully or inadvertently"; (2) the "evidence was favorable to the defense, either because it is exculpatory or because it is impeaching"; and (3) "the suppressed evidence was material (i.e., that prejudice

4

ensued)." *United States v. Dado*, 759 F.3d 550, 559–60 (6th Cir. 2014) (citations omitted). No *Brady* violation lies "if the defendant knew or should have known the essential facts permitting him to take advantage of the information … or if the information was available to him from another source." *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) (citations omitted). And beyond that, a new trial is warranted only if there is a "reasonable probability" that the result of the trial would have differed had the government disclosed the evidence to the defense. *United States v. Smith*, 749 F.3d 465, 489 (6th Cir. 2014) (citation omitted).

Recall that Campbell claims the government failed to disclose four pieces of evidence: (1) the initial investigation report, (2) the financial contract with the confidential informant, (3) the DNA lab report, and (4) the buy money from the controlled buy, as well as the correct time and date of the video depicting that buy. The Court considers each in turn.

Start with the easy one: the government's financial contract with the confidential informant. Campbell raised this same *Brady*-violation claim on appeal. And the Sixth Circuit determined that no *Brady* violation occurred. *Campbell*, 2024 WL 4635426, at *9. It first noted that the confidential informant testified at trial that the government had paid him, suggesting that the government had not withheld the financial contract. *Id.* Then the court concluded that, in any event, Campbell could not establish prejudice. *Id.* Given the Sixth Circuit's conclusion, Campbell's *Brady* claim regarding the financial contract necessarily fails in this Court, too.

5

Turn now to the initial investigation report. Campbell's trouble here is that, so far as the Court can tell, the government *did* disclose that report to defense counsel on June 17, 2019, as part of its initial production of discovery. (Doc. 146-1, #2310–11; *see also* Sent'g Tr., Doc. 136, #2069 (explaining that defense Exhibit 1 included the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) report that listed the drugs recovered from one of the searched premises)). That was nearly two-and-a-half years before trial. Said differently, the government did not suppress or withhold the initial investigation report from Campbell. Beyond that, though, when the government introduced the drug lab reports (the ones Campbell says contain higher drug quantities than the initial investigation report) at trial, defense counsel did not object. (*See* Trial Tr., Doc. 128, #1355–56 (admitting government Exhibit 8 without objection); Trial Tr., Doc. 129, #1547 (admitting government Exhibit 10 without objection); Trial Tr., Doc. 130, #1649 (admitting government Exhibit 11 without objection)). Defense counsel, moreover, had ample opportunity to cross-examine Melissa Sterling and Melisa Glatte—the drug analysts who prepared the drug lab reports and testified to their contents, (Doc. 130, #1721–32)—about those reports and any drug quantity discrepancies they may have contained. But counsel chose not to do so. (*See generally id.*). All told, then, Campbell "knew or should have known," at trial, "the essential facts permitting him to take advantage" of the drug quantity discrepancies he now alleges. *Graham*, 484 F.3d at 417 (citation omitted). Accordingly, Campbell's allegations about the initial investigation report do not give rise to a viable *Brady* claim.

Now consider the DNA lab report that Campbell claims excludes him as the DNA donor on certain physical evidence admitted at trial. Like the initial investigation report, the government disclosed the DNA lab report to Campbell before trial. True, the government says it made the disclosure on June 17, 2019, (Doc. 146, #2306 (citing Doc. 146-1, #2310–11)), while Campbell says the government "emailed [his] trial counsel the DNA lab report 5 days before trial," which would have been November 24, 2021. (Doc. 145, #2292; *see also* Doc. 130, #1687–88). But whichever of those is true, the government did not withhold the DNA lab report in the sense of failing to provide it. And if Campbell means to argue that a *Brady* violation arose based on what he perceives to be a *delayed* disclosure, the Court disagrees. When the government discloses evidence late, even as late as during trial, "no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *United States v. Spry*, 238 F. App'x 142, 147 (6th Cir. 2007). At Campbell's trial, Tracy Sundermeier—the forensic biologist who prepared the DNA lab report—testified to whether the report excluded Campbell as a DNA donor. (Doc. 130, #1683–1712). Defense counsel then cross-examined her on that same issue. (*Id.* at #1713–18). Campbell's counsel therefore had the opportunity to highlight any "discrepancies" in the DNA lab report and "to raise questions" about the report's contents and Sundermeier's credibility. *Spry*, 238 F. App'x at 149. Moreover, if defense counsel thought a continuance was necessary to prepare for cross-examination based on when he received the report, he could have requested one. But he made no such request. So even assuming (but not finding) that the government

7

"delayed" in disclosing the DNA lab report as Campbell claims, Campbell fails to explain how that perceived delay prejudiced him. Thus, no *Brady* violation exists.

That leaves the buy money and the video depicting the controlled buy. Admittedly, it is unclear whether the government disclosed the buy money before trial. (*See* Doc. 128, #1360 (suggesting that investigating officers never recovered the marked buy money and therefore couldn't produce it in discovery)). Even so, the Court is not convinced that evidence would have been "favorable" to the defense—i.e., the money Campbell accepted during the controlled buy is neither impeaching, nor exculpatory, as it does not negate any element of Campbell's offenses or raise a possible legal defense (at least as far as the Court can tell). *United States v. Hanna*, 661 F.3d 271, 297 (6th Cir. 2011). And beyond that, the Court cannot discern how a failure to disclose the buy money would have prejudiced Campbell in any way. After all, defense counsel cross-examined Officer Casch about the controlled buy at trial. (Doc. 128, #1357–61). And as the government argues, the controlled buy video, which the jury watched, "clearly showed [Campbell's] face and the threat he made to the witness." (Doc. 146, #2307). In light of what the jury saw and heard, the Court cannot conclude that the buy money itself, if disclosed, "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *McNeill v. Bagley*, 10 F.4th 588, 601 (6th Cir. 2021). In other words, Campbell cannot establish prejudice.

As for the controlled buy video's date and time, Officer Casch admitted at trial that the date and time listed on the recording (December 23, 2014) were incorrect.

8

(Doc. 128, #1310 (explaining that investigating officers did not reset the date and time on the recording device before beginning the recording, rendering the timestamp inaccurate)). But he clarified that the video depicted the June 8, 2018, controlled buy. (*Id.*). Campbell, for his part, offers no reason why earlier disclosure of the accurate date and time would have helped his defense. Or to put it slightly differently, the Court cannot discern how failing to disclose initially the correct date and time prejudiced him in any way, especially given that defense counsel had the opportunity to cross-examine Officer Casch about the inaccuracy.

All told, the Court finds no *Brady* violations.

**B.     The Materials to Which Campbell Points Are Not "Newly Discovered."**

The lack of a *Brady* violation does not, in and of itself, doom Campbell's claim. Campbell seems to argue (though none too clearly) that the government's failure to turn over the four pieces of evidence addressed above mean that they are, at the very least, "newly discovered" evidence that still would warrant a new trial. *See Hanna*, 661 F.3d at 298 (noting that "because no *Brady* violation occurred," the defendant had to "meet the usual four-part test" for newly discovered evidence to obtain a new trial). And then there is also the separate matter of the missing call record, which he says also supports a new trial. The Court disagrees; none of the cited evidence, whether considered alone or in conjunction, warrants a new trial.

Motions for a new trial based on newly discovered evidence are "disfavored" and "should be granted with caution." *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). When a defendant requests a new trial based on newly discovered evidence

9

(as Campbell seemingly does here), he must show that (1) he discovered the evidence after trial; (2) he could not have discovered the evidence earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal. *United States v. Jenkins*, 726 F. App'x 452, 454, 457 (6th Cir. 2018) (describing these four factors as the "*Barlow* factors" and citing *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982)). But for many of the reasons already discussed, Campbell falls short of the necessary showing.

For most of the evidence to which Campbell points, he runs into trouble at *Barlow* factor one—that is, he cannot establish that he discovered the evidence *after* trial. As noted, the government disclosed the initial investigation report on June 17, 2019—nearly two-and-a-half years before trial. (Doc. 146-1, #2310). Then, at trial, Sterling and Glatte testified about the drug lab reports, which Campbell says contradict the initial investigation report. (Doc. 130, #1721–32). The government likewise disclosed the DNA lab report before trial. (Doc. 145, #2292; Doc. 146-1, #2310). And at trial, Sundermeier testified about that report. (Doc. 130, #1683–1712). Moreover, the confidential informant testified about his financial contract with the government. (Doc. 129, #1593, 1601); *see also Campbell*, 2024 WL 4635426, at *9. As for the buy money and the video depicting the controlled buy, the government played the video at trial. (Doc. 128, #1310). And Casch testified about the buy money and the inaccuracy regarding the controlled buy video's date and time. (*Id.* at #1310, 1357–61).

10

Given that both sets of counsel either elicited or could have elicited trial testimony about the very evidence Campbell claims is "newly discovered," Campbell's argument necessarily fails. After all, "evidence is not newly discovered if a [d]efendant was aware of the evidence at trial." *United States v. D-1 Roscoe Benton, III*, No. 14-20082, 2016 WL 404060, at *9 (E.D. Mich. Feb. 3, 2016) (collecting cases); *see also Jenkins*, 726 F. App'x at 457 (defining newly discovered evidence as "evidence not known by the defendant *at the time of trial*" (emphasis added) (quotations omitted)).

When it comes to the absent call record, *Barlow* factor two poses a problem for Campbell. While he perhaps had not uncovered the apparent lack of an anonymous call in Hamilton County's phone records by trial, Campbell could have done so with reasonable diligence. Campbell knew about the anonymous criminal complaint well before trial—he litigated the issue at his *Franks* hearing and in his motion to suppress. (Def.'s Post Suppression/*Franks* Hr'g Br., Doc. 55, #383-84; Op. & Order, Doc. 60, #427, 433). If Campbell suspected the anonymous complaint didn't exist, he could have (and should have) contacted Hamilton County to investigate the suspected absent call record prior to trial. Pursuing a new trial now based on evidence he could have obtained then won't cut it.

Because the Court concludes that Campbell fails at factors one and two, it need not proceed to elements three and four. *See Jenkins*, 726 F. App'x at 457 ("Failure to meet any of the four elements is sufficient cause to end the court's inquiry."). That said, the Court briefly notes that Campbell has not explained how any of the

11

materials he cites would have likely produced an acquittal, so he likewise fails to meet his burden on that factor. And for good reason. The jurors heard testimony about most of the evidence Campbell now claims is "newly discovered," which means they appropriately relied on that evidence in finding Campbell guilty.

True, had defense counsel highlighted the alleged discrepancies in drug quantities between the initial investigation report and drug lab reports, that perhaps could have impacted the jury's finding as to the amount of fentanyl Campbell possessed (which related to Count 2). (*See* Doc. 87, #599). But Campbell had every opportunity to make those arguments at trial. He simply elected not to do so. The jury was therefore entitled to rely on the evidence presented to it. The Court cannot credit Campbell's current attempt to undo the jury's verdict based on evidence he could have exploited at trial.

One last thing bears mention. As Campbell's filing mounts an attack on his conviction based on allegedly new evidence, the Court could perhaps construe it as a collateral attack under 28 U.S.C. § 2255. The Court, however, declines to do so. For one, Campbell clearly labeled his motion as requesting a new trial under "Rule 33." (*See generally* Doc. 145). For another, treating the motion as a § 2255 petition could create barriers if Campbell later elects to file such a motion (which would then presumably be treated as a second-or-successive petition). The Court therefore confines its analysis to Rule 33's requirements.

## CONCLUSION

For the reasons described, the Court **DENIES** Campbell's Motion For a New Trial (Doc. 145).

**SO ORDERED.**

February 18, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**